**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 06-107 (GK)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEWAYNE JACKSON,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

**GOVERNMENT'S MOTION TO IMPEACH DEFENDANT WITH PRIOR**
**CONVICTIONS PURSUANT TO RULE 609**

The United States, by and through its attorney, the United States Attorney for the District of

Columbia, respectfully moves this Court to permit the introduction of Defendant's prior convictions

for impeachment purposes should the defendant elect to testify at trial in the above-captioned case.

In support of this motion, the Government relies on the following points and authorities and such

other points and authorities that may be adduced at a hearing on the matter:

1.      Defendant has been charged in a one-count Indictment with Unlawful Possession of

a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a

Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

2.      Prior Convictions: the Government seeks to impeach Defendant with two of his prior

convictions outlined below.

| Date | Offense | Case | Jurisdiction | Sentence |
|---|---|---|---|---|
| 11-28-94 | Assault with a Dangerous Weapon | 1991-FEL-7059 | D.C. | 2-10 Years Imprisonment |
| 11-28-94 | Possession of a Firearm During a Crime of Violence | 1991-FEL-7059 | D.C. | 5-15 Years Imprisonment |

1

On June 24, 1990, Defendant Jackson and several other individuals armed themselves with handguns and molotov cocktails and went in search of a person named Orlando Stinson.[1]  At approximately 10:30 p.m.– after seizing and releasing a sixteen-year-old boy thought to be associated with Stinson–the group assembled behind the Linda Pollen apartment complex.  There a member of Defendant's group threw a molotov cocktail at the family home of Mr. Keith Phillips.  The device landed on the patio of the apartment and exploded mere feet from where Phillips was standing.

Defendant Jackson, standing shoulder to shoulder with others, then let loose a hail of bullets into the home.  At least six people were inside when the bullets ripped through the living room and adjacent bedroom, leaving holes in the walls, shattering a fish tank, and hitting a couch that seconds earlier sat a mother and two infants.[2]

Defendant Jackson pleaded not guilty and was tried on six counts of assault with intent to kill while armed; possession of a firearm during the commission of a crime of violence; arson, possession of a molotov cocktail; and destruction of property.  At trial, Defendant testified under oath that he had no part in the attack, but instead was at a party in a different part of the city.  After hearing his testimony, eleven of twelve jurors voted to convict Defendant Jackson on all counts.  The matter, however, resulted in a mistrial.

When the matter was again set for trial on February 23, 1993, Defendant Jackson failed to appear.  He remained a fugitive for sixteen months, while his co-defendant proceeded to trial and

---

[1] Defendant Jackson belonged to a gang known as the "Lynch Mob" or the "Ninjas." This gang engaged in drug distribution in the Barnaby Terrace area and had an ongoing dispute with a rival drug organization run by Stinson.

[2] Several similar shootings and firebombings occurred in this area during the same time period.  Defendant was a suspect in one such assault that paralyzed twenty-year-old Lashawn Fraley; the prosecution was abandoned, however, when witnesses refused to testify.

was found guilty.  His co-defendant was sentenced to 18 ½ years to life.  Thereafter Defendant was apprehended and pleaded guilty on the day of trial to one count of assault with a dangerous weapon and one count of possession of a firearm during the commission of a crime of violence.  Defendant was sentenced to consecutive terms of two-to-ten years and five-to-fifteen years imprisonment for the respective charges.  Defendant was released from prison on July 13, 2004.  In the two years since his release, he has never reported with his parole officer.

3.      Subject to the time constraints of Rule 609(b), evidence that an accused has been convicted of a crime punishable by imprisonment in excess of one year  "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused."  Fed. R. Evid. 609(a)(1).  As explained below, here Defendant's convictions fall within the time constraints of Rule 609(b), and the probative value of each outweighs any prejudicial effect.  Both therefore are admissible for impeachment purposes.

4.      Federal Rule of Evidence 609(b) provides that "evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from confinement imposed for that conviction, whichever is the later date . . . ."  Fed. R. Evid. 609(b).  Defendant was released in 2004.   Therefore, "a period of more than ten years" has not elapsed since his release from confinement, and his convictions qualify for admission under Rule 609(b).

5.      In evaluating whether the probative value of the conviction outweighs its prejudicial effect, the trial court should begin with the premise, articulated by the D.C. Circuit, sitting en banc, that all felony convictions which meet the ten-year time limit prescribed in Rule 609(b) are at least somewhat probative of the defendant's credibility.  United States v. Lipscomb, 702 F.2d 1049, 1062

(D.C. Cir. 1983) (en banc); see also  United States v. Coats, 652 F.2d 1002, 1003 (D.C. Cir. 1981)
(The law approves of the inference that the fact "the defendant has sinned in the past implies that he
is more likely to give false testimony than other witnesses.").

6.      A prior conviction is especially probative of credibility when the defendant was
convicted after a trial in which he testified in his own defense, as the "the jury's verdict . . . is in a
sense a de facto finding that the accused did not tell the truth when sworn to do so." Lipscomb, 702
F.2d at 1067.  Under this principle, Defendant Jackson's convictions are highly probative of his
credibility.  Defendant pleaded not guilty to a ten-count indictment and went to trial.  At trial, he
proceeded to testify under oath and before a jury that he had no part in the charged attack.  Despite
his testimony, eleven of twelve jurors found him guilty on all counts.  When the case was tried a
second time, Defendant—again under oath—pleaded guilty to offenses that were based on the same
conduct he completely denied in the first trial.   Under Lipscomb, the past convictions are highly
probative because the near-unanimous finding of guilt in the first trial amounted to a de facto finding
that Defendant lied under oath; and his subsequent plea–as an admission of conduct he formerly
denied under oath–bolsters the conclusion that he perjured himself.

7.      Prior convictions are probative of credibility when they evidence a willingness to
resort to desperate measures.  See Lipscomb, 702 F.2d at 1054, 1073 (upholding admission of
robbery conviction in narcotics prosecution where the trial court found probativeness on the theory
that "the desperate person who would commit an armed robbery would also lie under oath").
Defendant Jackson's prior convictions show a willingness to resort to desperate measures in many
respects.  When it served his own interests, he firebombed and shot into a home filled with people,
and accosted a person for information.  Indifferent to the Court's authority, he eluded trial and

remained a fugitive to advance his interests. Finally, there is strong evidence that he previously lied under oath. These actions provide a firm basis to believe Defendant would not hesitate to testify falsely in this case.

8.    Prior convictions that display "conscious disregard for the rights of others" reflect more strongly on credibility. See Lipscomb, 702 F.2d at 1071 (citing robbery as an example: "Robbery is generally less probative than crimes that involve deception or stealth. But it does involve theft and is a serious crime that shows conscious disregard for the rights of others. Such conduct reflects more strongly on credibility than, say, crimes of impulse, or simple narcotics or weapons possession."). Few crimes could show more conscious disregard for the rights of others than Defendant's prior convictions. Far from qualifying as crimes of impulse, Defendant's prior acts were calculated to create maximum fear in specific persons and in the community, to destroy property, and to endanger human life. Therefore, under Lipscomb, Defendant's convictions should be considered good proof of his credibility.

9.    The probative value of a prior conviction is also enhanced by subsequent conduct showing a defendant has not been rehabilitated since the earlier conviction and that the prior conviction was not merely an isolated criminal episode. See Lipscomb, 702 F.2d at 1067, 1071 (stating that defendant's "more recent burglary conviction shows that he has not been rehabilitated since his robbery conviction, and therefore enhances the probativeness of the robbery conviction."). Such conduct is present in this case. Defendant had extensive contact with Maryland and District of Columbia Juvenile authorities before he was convicted of assault with a dangerous weapon and possession of a firearm during a crime of violence. He then served significant time and was released from prison for those offenses. Nevertheless, in the two years since his release Defendant never once

5

reported to his parole officer, nor did he abstain from using drugs.  See  Pretrial Services Report
(March 31, 2006).  Furthermore, both the Magistrate Court and Grand Jury found probable cause to
believe that–less than two years since being released from prison–Defendant again possessed a
firearm.   Taken together, Defendant's post-conviction conduct shows that he has not been
rehabilitated and that his prior convictions were not isolated criminal episodes.  In light of this
conduct, the prior convictions are all the more probative.

      10.    The Court of Appeals has long recognized the strong probative value of a prior
conviction when credibility will be central to the trial.  According to the Court,  when a case narrows
to the credibility of two persons, the accused and his accuser, "there [is] greater, not less, compelling
reason for exploring all avenues which would shed light on which of the two witnesses [is] to be
believed."  See United States v. Lewis, 626 F.2d 940, 951 (D.C. Cir. 1980) (citing Gordon v. United
States, 383 F.2d 936, 941 (D.C. Cir. 1967)).  When the defendant testifies and denies the allegations
made by the government and/ or the factual premises of its case, impeaching a defendant's credibility
is of "considerable significance to the government."  United States v. Stewart, 581 F.2d 973, 974
(D.C. Cir. 1978) (per curiam).  In such a situation of direct conflict in testimony, "it is obviously of
paramount importance that the jury have before it all information which might reflect on the
truthfulness of the witnesses who testify."  Id.  Indeed, it is "unfair and misleading to a jury, when
credibility is an issue, to refuse to admit relevant evidence that is directly probative on that issue."
Lewis, 626 F.2d at 950.

      The facts and evidence in this case are such that if Defendant elects to testify, his credibility
will be centrally in issue as it relates to his defense.  At trial the critical issue will be whether
Defendant possessed a firearm, and a Government witness (an MPD officer) will testify that he saw

6

Defendant Jackson jump from a window with a gun in hand and drop the gun upon hitting the ground. To acquit after hearing this evidence, the jury would have to credit Defendant's testimony over the testimony of this officer. Conversely, in order to convict, the jury would have to disbelieve any defense that Defendant's possession was accidental or that his presence with the gun was coincidental. This, the Court of Appeals has recognized, makes the defendant's credibility a central issue. See United States v. Crawford, 613 F.2d 1045, 1047 (D.C. Cir. 1979); see also id. at 1048 (stating the defendant's credibility was "key issue" in trial because in order to convict, "the jury first had to disbelieve her testimony that she had no connection with the heroin," and then rely on several facts that she disputed, including the amount of cash on her person during the raid, her statements to a police officer that she could "beat this case because I am an addict," and her statement over the phone that "they got me with your stuff."). Therefore, Defendant Jackson must not be permitted to appear before the jury as a person entitled to complete credence, when his criminal record stands to the contrary. See Lewis, 626 F.2d at 950 ("Courts should be reluctant to exclude otherwise admissible evidence that would permit an accused to appear before a jury as a person whose character entitles him to complete credence when his criminal record stands as direct testimony to the contrary.").

11.    The prejudicial effect of admitting the convictions is slight by virtue of the charge in this case. When other prejudicial evidence is already before the jury, the prejudice occasioned by the admission of a prior conviction is marginal, and can be slight at that. See Stewart, 581 F.2d at 974 (noting "any possible additional prejudice deriving from allowing in the testimony of appellant's prior convictions for impeachment was reduced at the time the appellant testified because evidence, to which no objection was made, was already before the jury that Stewart had served some eighteen

7

years in jail"). Other prejudicial evidence will certainly be before the jury in this case because proof of prior conviction is an element of the offense under 18 U.S.C. § 922(g). Under the principle articulated in Stewart, since the jury will already be hearing that Defendant has at least one prior conviction, any prejudice occasioned by the introduction of the convictions will be marginal.

12.     The facts of this case are such that even similarity of offense favors admission. Lewis provided that a prior conviction may be even more probative when the defendant is tried for a similar offense, giving the example that evidence of a prior drug conviction "carries more probative value and is more necessary when the accused testifie[s] that he is not knowledgeable in drug transactions and his testimony on that point directly contradicts that of his accuser." See id., 626 F.2d at 947-51. Likewise here Defendant Jackson, if he elects to testify, must (in light of the Government's evidence) completely deny the allegations and directly contradict the testimony of his accuser. Therefore, as in Lewis, the fact that Defendant's prior conviction was for a similar offense makes it even more probative, and the prejudicial effect remains limited.

13.     The opportunity to rehabilitate a witness on redirect examination can further reduce potential prejudice. See Jackson, 627 F.2d at 1210 (upholding admission of manslaughter conviction in subsequent narcotics prosecution, noting that defendant's attorney presumably could have neutralized potential prejudice by bringing out facts that "tended to mitigate somewhat the 'bad man' image").

14.     The fact that Defendant's prior convictions were for violent offenses in no way precludes their admission. See, e.g., Jackson, 627 F.2d at 1210 n.28 (upholding admission of manslaughter conviction in which the defendant had shot and killed both his wife and the man she was with); see also Lipscomb, 702 F.2d 1049 (upholding admission of robbery conviction).

15.     In addition, the court's instruction to the jury to refrain from using such evidence for an improper purpose will lessen whatever prejudice there may be to Defendant.  See Lewis, 626 F.2d at 950 (directing that such instruction should be given).

16.     Inasmuch as every impeachment by prior conviction involves some inherent prejudice to a defendant, that prejudice by itself should not be enough to preclude the Government's impeachment of Defendant in this case.  Cf. Lipscomb, 702 F.2d at 1062 ("[w]hen the defendant is impeached by a prior conviction, the question of prejudice . . . is not if, but how much") (emphasis in original).

17.     In conclusion, Defendant's convictions have probative value because they enable a fair assessment of his credibility.  Their probative value is uncommonly high because: (1) Defendant pleaded guilty only after eleven of twelve jurors rejected his testimony in an earlier trial; (2) the prior convictions show a willingness to resort to desperate measures; (3) the prior convictions show a conscious disregard for the rights of others; (4) Defendant's subsequent conduct shows he has not been rehabilitated since the earlier convictions and that his prior convictions were not isolated incidents of criminal activity; and (5) Defendant's credibility will be a central issue if he elects to testify.  The prejudicial effect is slight because other prejudicial evidence will already be before the jury, similarity of offense actually favors admission, defense counsel will have the opportunity to rehabilitate on redirect examination, and the Court can provide an appropriate limiting instruction.  Thus, the probative value of the convictions outweighs whatever prejudice there may be to Defendant, and therefore the convictions should be admitted for impeachment purposes.

WHEREFORE, for the reasons stated above, the United States respectfully requests that this Honorable Court grant the Government's motion to impeach the Defendant's credibility with his

prior convictions should he testify at trial.

Respectfully submitted,


KENNETH L. WAINSTEIN
United States Attorney
Bar No. 451058

_____
BRIAN P. ROGERS
Special Assistant United States Attorney
Maryland Bar
Federal Major Crimes Section
555 4th Street, NW, Room 4712
Washington, DC 20530
(202) 616-1478

10

<u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Lara Quint, this 24th day of May, 2006.

                                    _____

                                    Brian Rogers
                                    Special Assistant United States Attorney