UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-107 (GK) |
| v. | : | |
| DEWAYNE JACKSON, | : | |
| Defendant | : | |

## GOVERNMENT'S MOTION TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves in limine for admission of certain evidence pursuant to Federal Rule of Evidence 404(b). The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

### Factual Background

On March 30, 2006, police responded to XXX, in Washington, D.C., after an informant tipped Metropolitan Police Department Focus Mission Team (FMT) that an individual with several outstanding warrants was sitting on the front steps in possession of crack cocaine. When officers reached the scene, a number of individuals reacted to police presence by running inside the apartment building. Several officers entered the building in pursuit, and three officers took up positions behind the building. Inside the building officers proceeded to Apartment XX, one of two apartments the informant said the subject would enter if he fled. There a female answered the door and upon inquiry told police that her boyfriend was also in the apartment. When officers asked to speak with the boyfriend, the female walked to the rear of the apartment and stated, "Come talk to

1

the police." Officers then heard crashing and banging in the rear of the apartment, and the female began to scream. At the same time Officer Mike Jewell, who was positioned outside the building, observed Defendant climb out of the first-floor window, jump to the ground with a gun in his hand, and drop the firearm upon landing. Officers recovered the gun—a black Colt .45 caliber semi-automatic pistol with four rounds in the magazine—and arrested Defendant. Officers also arrested a second man inside the apartment after finding him near a closet containing sixty-seven ziplock bags of crack cocaine. Defendant has been charged in a one-count Indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

### Evidence of Other Crimes and Bad Acts

On November 28, 1994, Defendant was convicted of: (1) Assault with a Dangerous Weapon, and (2) Possession of a Firearm During a Crime of Violence, in the Superior Court of the District of Columbia (Criminal Case Number 1991-FEL-7059). In that case, Defendant and several other individuals armed themselves with handguns and molotov cocktails and went in search of a person named Orlando Stinson.[1] After members of the group accosted a sixteen-year-old boy and threw a molotov cocktail at a family home, Defendant and others stood shoulder to shoulder and fired a hail of bullets into an apartment containing six people. Defendant pleaded guilty following a mistrial in which eleven of twelve jurors found him guilty on all counts of a ten-count indictment[2] despite his

---

[1] Defendant Jackson belonged to a gang known as the "Lynch Mob" or the "Ninjas." This gang engaged in drug distribution in the Barnaby Terrace area and had an ongoing dispute with a rival drug organization run by Stinson.

[2] Defendant was charged with six counts of assault with intent to kill while armed; possession of a firearm during the commission of a crime of violence; arson, possession of a molotov cocktail; and destruction of property.

testimony denying any participation in the attack.[3]  Defendant was released from prison on July 13, 2004.  The government seeks to introduce certain facts underlying these convictions to prove knowledge, intent, and absence of mistake or accident in the charged offense.

### Legal Analysis

Rule 404(b) of the Federal Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .  Fed. R. Evid. 404(b).

Rule 404(b) is a rule of inclusion rather than exclusion.  See United States v. Bowie, 232 F.3d 923, 929-30 (D.C. Cir. 2000) ("[A]lthough the first sentence is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of other crimes evidence 'in but one circumstance'–for the purpose of proving that a person's actions conformed to his character.").  Indeed, the rule prohibits "only that which lacks any purpose but proving character." Id. at 930. The analysis proceeds in two steps, beginning with the question of relevance.  Id.  The Court determines whether "the other crime or act [is] relevant and, if so, relevant to something other than the defendant's character or propensity.  If yes, the evidence is admissible unless excluded under other rules of evidence such as Rule 403."  Id.

**1.     Relevance Under Rule 404(b)**

---

[3] The plea also occurred after Defendant was a fugitive for sixteen months for failing to appear at the second trial, during which time his co-defendant was retried, convicted on all counts, and sentenced to 181/2 years to life in prison.

The government seeks to introduce 404(b) evidence–namely, the defendant's prior gun possession– not solely to prove the defendant's character, but rather to prove knowledge, intent, and absence of mistake or accident, all of which are permissible purposes under Rule 404(b). On the facts of this case, the controlling law is United States v. Cassell, 292 F.3d 788 (D.C. Cir. 2002), and United States v. Garner, 393 F.3d 438 (D.C. Cir. 2005). In Cassell, the Court of Appeals upheld admission of a prior conviction for firearm possession in a subsequent 922(g) case, finding the conviction "was relevant to show knowledge of, and intent to possess" firearms recovered from the defendant's bedroom. Id. at 792. The Court reasoned that the government had to prove the mental element of knowing and intentional possession, and that "in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." Id. at 793. According to the Court, "The government was required to prove that Cassell knowingly possessed the firearms found in his room. The fact that Cassell had previously possessed weapons tends to make it less probable that the weapons recovered from his bedroom were there without his knowledge, without intent, or by accident or mistake." Id. at 796.

Like Cassell, here the government must prove the mental element of possession, namely that the defendant knowingly and intentionally possessed the firearm—either during his jump from the apartment window, or after he dropped it on the ground. Moreover, like Cassell, here the government will be advancing a constructive possession theory at trial and therefore must prove that the defendant "knew of, and was in a position to exercise dominion and control over" the firearm that was on the ground where he landed. Id. at 792. Therefore, under the principles articulated in Cassell, evidence of the defendant's prior gun possession is relevant to his knowledge and intent in

4

the charged offense because it makes it less probable that the firearm recovered from the ground was there without his knowledge, without intent, or by accident or mistake. Accordingly, evidence of the defendant's prior possession of a firearm is offered for permissible purposes under Rule 404(b). Indeed, evidence of prior possession is especially probative in this case because the circumstances of the gun recovery–including, for example, the panic in response to police presence, the existence of another man inside the apartment in close proximity to the gun and to drugs, and the prevalence of guns in the area–provide fertile ground to assert (or for the jury to be curious about) accidental possession, mistaken possession, lack of intent, and/or lack of knowledge.

Admission is not problematic under United States v. Linares, 367 F.3d 941 (D.C. Cir. 2004). Linares was a felon-in-possession case in which the Court of Appeals found previous gun possession irrelevant to knowledge and the absence of mistake. Id. at 952. In Linares, actual possession was the only theory before the jury, and the evidence of possession was overwhelming, including three eyewitnesses who testified to seeing the defendant with the gun. Id. at 944. According to the Court of Appeals, the evidence of the defendant's actual possession was such that no reasonable jury could have concluded that the defendant possessed the gun but that he did so without knowledge or by mistake. Id. at 947. Therefore, the Court concluded, the defendant's previous possession of a pistol "made it no 'more probable or less probable' that [he] possessed the gun knowingly or unmistakenly." Id. at 952.

The present case is easily distinguished because here the government can advance two viable theories of possession at trial. The jury can infer actual possession based on evidence that an officer saw the defendant holding the gun as he jumped from the apartment. If this were the sole theory of possession, one could argue that a person cannot hold a gun accidentally or without knowing the

5

item in-hand is a gun, and therefore conclude that additional evidence of mental state is irrelevant. Here, however, even discrediting evidence of actual possession, the jury can nevertheless find that the defendant constructively possessed the firearm when it was on the ground. That is, conceivably a jury could disbelieve that an officer actually saw a gun in the defendant's hand, but nevertheless be convinced that a gun was on the ground; that the defendant exercised dominion and control over it; and therefore that the defendant constructively possessed it. The second theory, by definition, involves no direct physical control over the item that could in itself necessitate finding the requisite mental state. Rather, additional proof of mental state is necessary—for a person can have power to control an item without intending to control it, have access to an object without knowing it, and stand next to an object coincidentally or without knowledge of its presence. And since further proof of mental state is required, evidence of the defendant's prior possession is invaluable because it makes less probable the conclusion that the gun was next to him without his knowledge, without intent, or by accident or mistake.

United States v. Garner, 393 F.3d 438 (D.C. Cir. 2005) supports this position. Garner distinguished Linares as a case involving only actual (as opposed to actual and/or constructive) possession, see id. at 442-43, and upheld the admission of previous gun possession in a subsequent 922(g) case to prove the defendant's "knowledge of the gun's location and of its accessibility to him." Id. at 445. In Garner, the defendant was seen removing a firearm from his waistband and placing it underneath the passenger seat in which he was sitting. Id. at 439. At trial, the district court admitted testimony that police once before had found a handgun under the defendant's seat, and instructed the jury that it could use the evidence only to decide if the defendant had the intent to possess the firearm and "acted knowingly and on purpose and not by accident or mistake." Id. at

440.  Since, unlike Linares, constructive possession was a viable theory, the Court of Appeals held that it was proper to introduce the defendant's prior instances of gun possession to prove that the charged possession was knowing.  See id. at 444-45.  Like Gardner, this case involves a viable constructive possession theory; it therefore does not fall under Linares, but is controlled by Cassell and Garner, both of which upheld admission of a defendant's previous gun possession in a subsequent 922(g) case.  Having thus established that evidence of the defendant's prior possession of a firearm is permissible under Rule 404(b), we move to the second inquiry of admissibility under Rule 403.

**2.    Admissibility Under Rule 403**

Rule 403 "'tilts, as do the rules as a whole, toward the admission of evidence in close cases,' even when other crimes evidence is involved.  In performing the balancing test required under Rule 403, 'it is a sound rule that the balance should generally be struck in favor admission when the evidence indicates a close relationship to the event charged.'"  Cassell, 292 F.3d at 795.

Here numerous factors show that the probative value of admitting the 404(b) evidence is not "substantially outweighed by the danger of unfair prejudice."  See Fed. R. Evid. 403.  First, the probative value of the evidence is high because it is relevant to an issue other than character, and it concerns the defendant's knowledge and intent with respect to the gun recovered from the ground.  See Cassell, 292 F.3d at 795 ("The contested evidence's probative value was high as it was relevant to an issue other than Cassell's character: it concerned Cassell's knowledge and intent with respect to the firearms recovered from the bedroom.").  Second, the prejudicial components of the defendant's prior convictions–e.g., the gang involvement, the throwing of molitav cocktails, the presence of infants inside the apartment fired upon–can all be excised from the evidence of the

defendant's prior gun possession. Third, the prejudicial effect is slight by virtue of the charge in this case. Since proof of prior conviction is an element of the offense under 18 U.S.C. § 922(g), the jury will hear that the defendant has at least one prior conviction, and this prejudicial information will reduce any additional prejudice occasioned by evidence of prior possession. See United States v. Stewart, 581 F.2d 973, 974 (D.C. Cir. 1978) (noting in the context of Rule 609 that "any possible additional prejudice deriving from allowing in the testimony of appellant's prior convictions for impeachment was reduced at the time the appellant testified because evidence, to which no objection was made, was already before the jury that Stewart had served some eighteen years in jail."). Fourth, the court's limiting instructions will even further protect the defendant from undue prejudice. See Cassell, 292 F.3d 788, 795 ("This is the type of instruction that 'can sufficiently protect a defendant's interest in being free from undue prejudice.'").

WHEREFORE, for the reasons stated above, the United States respectfully requests that this Honorable Court grant the government's motion to introduce evidence pursuant to Federal Rule of Evidence 404(b).

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
Bar No. 451058

_____
BRIAN P. ROGERS
Special Assistant United States Attorney
Maryland Bar
Federal Major Crimes Section
555 4th Street, NW, Room 4712
Washington, DC 20530
(202) 616-1478

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Lara Quint, this 25th day of May, 2006.

                                                      _____
                                                      Brian Rogers
                                                      Special Assistant United States Attorney