UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-107 (GK) |
| v. | : | |
| DEWAYNE JACKSON, | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motion to Suppress Evidence. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

**FACTUAL BACKGROUND**

On March 30, 2006, police responded to 1418 First St., S.W., in Washington, D.C., after an informant tipped Metropolitan Police Department Focus Mission Team (FMT) that an individual with several outstanding warrants was sitting on the front steps in possession of crack cocaine. When officers reached the scene, a number of individuals reacted to police presence by running inside the apartment building. Several officers entered the building in pursuit, and three officers took up concealed positions behind the building (two watched from behind a dumpster, and a third watched from behind a wall). Inside officers proceeded to Apartment 11, one of two apartments the informant said the subject would enter if he fled.[1] There a female answered the door and upon inquiry told police that her boyfriend was also in the apartment. When officers asked to speak with

---

[1] The informant said the subject would enter either Apartment 11 or 12.

the boyfriend, the female walked to the rear of the apartment and stated, "Come talk to the police." Officers then heard crashing and banging in the rear of the apartment, and the female began to scream. At the same time Officer Mike Jewell, who was positioned outside the building, radioed that the defendant was climbing out of the first-floor window with a gun. Jewell observed the defendant climb out of the window, jump to the ground with a gun in his hand, and drop the firearm upon landing. Jewell drew his weapon and all three officers emerged from hiding. They moved in on the defendant, who began running away. Officer Jewell, who came at the defendant from the side, had his gun drawn facing downward. While the defendant was running, Jewell said something to the effect of, "there's no use running." As the officers converged, the defendant stopped running and laid himself face down on the ground. He did this without instruction, and before officers reached or touched him. When officers then attempted to restrain him, the defendant began bucking and jerking his body, and he directed a stream of profanities at the officers. After the defendant was restrained, officers recovered the gun which was a short distance away—a black Colt .45 caliber semi-automatic pistol with four rounds in the magazine. Officers arrested Defendant, and found several other individuals inside the apartment. They arrested a second man inside the apartment after finding him near a closet containing sixty-seven ziplock bags of crack cocaine. Officers also arrested the subject of the informant's tip inside Apartment 12. Defendant has been charged in a one-count Indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

      Defendant filed a motion to suppress evidence asserting the following argument: "In the instant case, the stop and arrest of Mr. Jackson not only were conducted without a warrant, but were

not based on any other legitimate exception to the warrant requirement. Mr. Jackson's stop, search, and seizure by the law enforcement officers were therefore unreasonable. Exclusion of any evidence recovered as a result of this Fourth Amendment violation is the appropriate remedy." As explained below, Defendant's argument is without merit and his motion to suppress evidence should be denied.

## ARGUMENT

**I.     The Actions of Law Enforcement Did Not Constitute a Search and the Defendant Does Not Have Standing to Challenge Admission of the Evidence**

Police conduct does not amount to a search–which is necessary to trigger Fourth Amendment protection and to establish standing to challenge the fruit of a search–unless the conduct invades a constitutionally protected expectation of privacy.  See Rakas v. Illinois, 439 U.S. 128, 131 (1979) ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.").  Such constitutionally protected expectation of privacy must have two parts: "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable."  See Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).  While applying this definition may prove difficult at times, one proposition has long been clear: namely, there is no legitimate expectation of privacy in items exposed to public view.  See, e.g., Katz, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); California v. Ciraolo, 476 U.S. 207, 213 (1986) ("[M]ere fact that an individual has taken some measures to restrict some views of his activities [does not] preclude an officer's observations from a public vantage point where he has a right to be and which renders the

activities clearly visible."); Florida v. Riley, 488 U.S. 445, 449 (1989) ("As a general proposition, the police may see what may be seen 'from a public vantage point where [they have] a right to be."); California v. Greenwood, 486 U.S. 35, 41 (1988) ("[T]he police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public.").

Under these authorities, the defendant cannot claim a legitimate expectation of privacy in this case. He did not have an actual subjective claim of privacy because he was holding the gun in hand during broad daylight as he noisily jumped from an apartment window. He also dropped it on the ground, where it was accessible to the public and where any bystander could see it.[2] It is equally clear that the defendant had no objective expectation of privacy in the gun, or in the area it was found, because both were in plain view. Therefore, the defendant did not have a legitimate expectation of privacy in the gun; it is not the subject of Fourth Amendment protection; and the defendant does not have standing to challenge its admission as the fruit of an unlawful search. See also Rawlings v. Kentucky, 448 U.S. 98, 106 (1980) ("Had petitioner placed his drugs in plain view, he would still have owned them, but he could not claim any legitimate expectation of privacy.").

## II.   The Gun Was Lawfully Seized Under the Plain View Seizure

The firearm in this case was lawfully seized under the plain view doctrine. As articulated by the Supreme Court, "if, while lawfully engaged in an activity in a particular place, police

---

[2] This conclusion is bolstered by cases where property is abandoned. See, e.g., United States v. Thomas, 864 F.2d 843, 845 (1989) ("A warrantless search of seizure of property that has been 'abandoned' does not violate the fourth amendment. 'When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had.'").

officers perceive a suspicious object, they may seize it immediately." Texas v. Brown, 460 U.S. 730, 739.  The warrantless seizure is lawful if the officer did not violate the Fourth Amendment in arriving at the place from which the object was viewed, the object's incriminating character was immediately apparent, and the officer had a lawful right of access to the object seized.  See California v. Horton, 496 U.S. 128 (1990).  Here officers saw the firearm sitting on the ground in a public place; and, as the previous paragraphs demonstrate, the defendant had no legitimate expectation of privacy in the place or the object.  Thus, the officers viewed the gun from a lawful vantage point and had a lawful right of access to it.  The fact that Officer Jewell immediately alerted his fellow officers upon seeing the weapon proves that its incriminating character was immediately evident.  Accordingly, the gun was lawfully seized under the plain view doctrine.

**III.    The Firearm Is Not Fruit of a Seizure.  Therefore the Exclusionary Rule Does Not Apply.**

The Supreme Court has held that a fleeing subject is not seized, and therefore property abandoned during chase prior to seizure is not the fruit of a seizure.  See California v. Hodari, 499 U.S. 621, 629 (1991).  Hodari involved a defendant who fled upon seeing police and tossed crack cocaine just before officers tackled him in pursuit.  The Court rejected the argument that the defendant was seized upon seeing officers run towards him, that such seizure was unreasonable, and that the crack seized was inadmissible as the fruit of the illegal seizure.  Id. at 623.  The Court held that a seizure requires either the application of physical force or "submission to the assertion of authority." Id. at 626.  Since the defendant did not comply with an assertion of authority, he was not seized until he was tackled.  As a consequence, the Court held, "[t]he cocaine abandoned while he was running was in this case not the fruit of a seizure,

and his motion to exclude evidence of it was properly denied." Id.

Likewise, here the defendant cannot show that he was seized before dropping the gun. He was not touched by officers before discarding it, thus there was no seizure by physical force. He had no direct contact with police prior to discarding the weapon–he did not see them, and they did not speak to him. Thus, no authority was even asserted beforehand. But even assuming an assertion of authority before the drop, the defendant did not submit, for at very point he dropped the gun he was escaping out the window. When he did see and hear the officers, he ran from them–ultimately submitting only when cornered and after tossing the gun. Thus, the gun was abandoned prior to the seizure and cannot therefore be excluded as fruit of the seizure. Moreover, in any event, the defendant was lawfully seized because, as explained below, officers had probable cause to arrest him.

**IV.   If Police Conducted a "Search," It was Permissible as a Search Incident to Lawful Arrest and as a Lawful Terry Stop and Frisk**

1.   Search Incident to Lawful Arrest

Even if police conduct did amount to a search within the meaning of the Fourth Amendment, it was nevertheless justified as a search incident to lawful arrest. Under the Fourth Amendment, "an arresting officer may, without a warrant search a person validly arrested." Michigan v. DeFilippo, 443 U.S. 31, 34 (1979). The scope of the search is not limited to the person, but extends to the area that was under the arrestee's personal control at the time of the arrest. Chimel v. California, 395 U.S. 752, 763 (1969); United States v. Holmes, 385 F.3d 786 (D.C. Cir. 2004). The defendant in this case was validly arrested because officers had probable cause to believe he was possessing a firearm, based on firsthand observations including the

6

defendant holding a gun outside a home. Therefore, officers were permitted to search him and the area within his personal control at the time of the arrest. The gun was within his personal control at the time of the arrest because it was only a short distance away, evidence of the crime, and was put there moments before the arrest. See Rawlings v. Kentucky, 448 U.S. 98, 106 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.").

  2. Terry Stop and Frisk

  If police did conduct a search, it was lawful as a protective patdown search for weapons under Terry v. Ohio, 392 U.S. 1 (1968). Under Terry and its progeny, "a police officer may perform a protective frisk if he has reason to believe, based on 'specific and articulable facts . . . taken together with rational inferences from those facts,' that 'he is dealing with an armed and dangerous individual.'" United States v. Holmes, 385 F.3d 786, 789 (D.C. Cir. 2004) (citing Terry). The officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27; see also United States v. Smart, 98 F.3d 1379, 1384 (D.C. Cir. 1996) ("Further, an officer may frisk such a suspect if the officer has reasonable, articulable suspicion that the suspect in question *may be* armed and dangerous."). This rule recognizes the immediate and weighty interest of officer safety. See Terry, 392 U.S. at 23.

  Here the danger to officers was unmistakable because the defendant was seen with firearm in hand. Numerous other factors also support a reasonable fear. The scene was a wide

open drug market.  See United States v. Brown, 334 F.3d 1161, 1165 (D.C. Cir. 2003).  The defendant fled in all out panic in response to police presence.  See id. at 1167-68.  The defendant was hostile to the officers and uncooperative with efforts to restrain him.  He was a short distance from the weapon.  There were other criminals and potential escapees in the area who could have taken the gun.  Accordingly, if there was a search, it was justified as a valid Terry stop and frisk.

WHEREFORE, for the reasons stated above, the defendant's Motion to Suppress Evidence should be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN.
United States Attorney
Bar No. 451058

_____
BRIAN P. ROGERS
Special Assistant United States Attorney
Federal Major Crimes Section, Maryland Bar
555 4th Street, N.W., Room 4712
Washington, DC 20530
(202) 616-1478